Higgins *v.* Lee.

first day of January; the note offered in evidence under the declaration, was made payable " *on*" the first day of January. It was insisted that this was a variance.

MANNING and MERRIMAN, for Appellant.

N. H. PURPLE, for Appellee.

EBENEZER HIGGINS, Appellant, *v.* JOSEPH LEE, Appellee.

APPEAL FROM LA SALLE.

Where it is apparent that the jury misunderstood or disregarded the evidence or instructions of the court, or neglected properly to consider the facts, or overlooked prominent and essential points in them, and have failed to do substantial justice, the verdict will be set aside and a new trial granted.

A new trial will be granted for giving improper instructions to or withholding proper instructions from the jury.

Where a contract specifies that materials to be used, shall be of the best quality, and to be approved before used, the party furnishing them should apply to have them approved, or he uses them at his peril.

In a contract for finishing a building, a party sustaining damage by the use of poor materials and workmanship, may recoup under the general issue, by way of reducing the recovery under the *quantum meruit* or valebant counts.

The damages so recouped, to be deducted from the value of the labor and materials proportionately, as fixed by the contract.

Where an instrument is not truly described in its material parts, it cannot be read in evidence, under a special count upon it.

Where performance under a contract is alleged at the day fixed by it, proof of performance under a parol enlargement of the contract, is not sufficient. Nor will excuse for non-performance be received.

Averment of a demand at the usual place of residence of a party, is not sustained by proof of demand at his still-house.

Where a party stipulates to do all ·the work on walls and partitions, etc., according to plans and specifications which are embraced within the contract, this will not be restricted to the number of walls and partitions, and their condition on the day the contract was executed, but will be understood as applying to the plans and specifications.

This was an action of assumpsit, brought by appellee against appellant in the County Court of La Salle County, to the March term, A. D. 1855. The declaration contained one special count and the common counts. The special count averred that by a certain agreement, made on the 21st December, A. D. 1852, between plaintiff and defendant, the plaintiff agreed to furnish all the materials, such as lath, nails, lime, sand, etc., and do all the labor in plastering and stucco work, required to be done on the building then being built by said defendant, and known as the " Chambers House ;" said plastering and stucco work to be done and finished according to the specifications of said work, by J. Mullany, architect of said house. That defendant agreed to pay plaintiff for said work and materials, the sum of two thousand dollars ; four hundred of said sum to be paid in horses and wagon, and the remaining sixteen hundred dollars to be paid as the work progressed. That the plaintiff had performed and fulfilled all things on his part to be performed and fulfilled, and did afterwards enter upon and commence the said work, and for that purpose did procure and find all materials and labor necessary for performing the same, and did progress with said work as fast as the joiner work would admit of, *and did finish and complete the same, to wit, all the plastering and stucco work required to be done on said Chambers House, according to the said specifications by said Mullany.* Yet the defendant would not pay, but neglected and refused. Annexed to the declaration was a copy of the contract and a bill of particulars. Defendant filed a plea of the general issue.

On the trial, the plaintiff offered in evidence the written contract of the parties. The defendant objected to the introduction of said contract in evidence, under the first count of the declaration, and the court sustained the objection, and the contract was excluded under said first count. Said contract was then read in evidence, under the common counts, and also the following specifications of J. Mullany : Title plastering ; all the halls, and rooms, and closets, on the first and second floors, lathed (three-eighths inch between,) plastered, browned and hard-finished, fit to receive paint ; all angles perfectly straight, evenly and smoothly laid on ; the mortar of the best quality, and

approved of before laying on; the dining room to have a good dental cornice, and three center-pieces, with roffles, twist and foot leaf in each; the parlor to have a good cornice, of approved model, with two center-pieces, with scroll and foot leaf. The hall to have two centers, with plain cornice and leaf. The third floor, the attic and the basement, with all the rooms, halls, passages, apartments, closets, stairs, etc., to have lath, and plastered two coats, and finish smooth, with good materials, and in proper proportions, and finished white, fine and workmanlike.

Plaintiff then called John Burrell, who testified that plaintiff had the contract for plastering the Chambers House; saw four or five of plaintiff's men at work there. Witness thinks there was some filling of the inner surface of the wall, because of the wall not having been built straight. Saw plaintiff cutting down some chimneys that projected eight inches into the room, two in the west end, and two in the drawing room. Saw Mr. Lee and his son at work on a cistern there.

Plaintiff then called S. Broost, who testified that he helped plaintiff to plaster first brick story, and part of the second; thinks plaintiff furnished the materials. There was some filling between joists in the lower story; plaintiff did it; don't know how much it was worth. Lee worked some on chimneys in dining room, and did the plastering in the attic. Witness stated that the basement was rough, and that it would cost more than for one coat of plaster to put it in order; half as much more. Plaintiff made the cistern; don't know who furnished materials. Walls of house were crooked; they were filled up with mortar. The plastering was well done, the roof leaked and spoiled it; the material was good. The halls, rooms and closets were all plastered, so far as witness knew. The first and second stories were hard-finished, ready for paint.

Cross-examined. Don't know how much filling up between the joists plaintiff did. Saw him at work at two chimneys; saw him plastering in the attic; can't say how much he worked on the cistern; *was at the house when it was finished. There is no cornice nor center-pieces in any of the rooms.*

Re-examination. Higgins was there often; never heard him object to leaving off the cornices or center-pieces.

Plaintiff then called Wm. Grundy, who testified: plaintiff did the plastering in the Chambers House, and furnished the materials for plastering. Some alteration was made in the fire places; I believe there were ten or twelve of them. Considerable extra work was done, in tearing off the lath over several doors. Plaintiff topped out a kitchen chimney, put on not less than two feet, and perhaps three or four feet. Lee cleaned out flues inside. Plaintiff built the cistern; it was a large one; he

plastered and cemented it. The roof of the ceiling leaked very bad. The plastering fell from the ceiling; sometimes more than half the plastering fell from the ceiling at a time. Plaintiff put it on again; was worth from one to three hundred dollars. There was a privy put up, the ceilings of which plaintiff lathed and plastered, two stories high, ten feet wide, and eighteen to twenty feet long. Plaintiff worked on this by the day; don't know how many days. Plaintiff made arrangements for some stucco work; got a man from Chicago to put it on, and the company concluded not to have the stucco work done.

Cross-examined. Defendant did not say that company would not have the stucco work done, but came to the conclusion "*to let it go.*" The extra work that was done by plaintiff was worth several hundred dollars, from two to five hundred dollars. Lee admitted that defendant furnished materials for the cistern.

Plaintiff then called Valentine Crelty, who testified that there were six chimneys altered by plaintiff, and that flues were cleaned out, and chimney topped out.

Plaintiff then called Seth W. Hardin, who testified, that several partitions were put in or altered, and that the plastering fell off on account of the roof leaking, and that it was worth thirty to forty dollars to patch up the plastering when it fell off from beginning to the end. Several other items of account were testified to as of extra work.

Mr. Grundy recalled. Brick walls of the Chambers House not lathed; no laths put on the brick walls of the rooms or halls; the house had three stories of brick above the basement.

Hardin recalled. Brick walls did not have any blocks or studding put into them for furring.

Cross-examined. Worth eight cents per yard to lath the walls and find materials.

Defendant then called T. D. Brewster, who testified, that he was one of the building committee to superintend the building of the Chambers House; that there was no change in the plan of the building after December 21st, A. D. 1852, except some of the partitions were moved; there was no change in the attic. Witness employed plaintiff to make the oven wall, and paid him for it; believes it is less work to take out the fire-places and plaster over than to plaster around them; was no change in basement that added to expense of plastering; there was some little change in basement, but plaintiff told witness, since this trial, that defendant had paid him for some alterations, and he had put on some others, and that it was all settled for. Materials used in plastering Chambers House were very poor; sand came from the river where it had been washed; not hair enough in plastering; fell off all over the house where it never had been

wet; it fell off after we had put a new tin roof on the house that did not leak; the falling of the plastering was not caused by water; no cornice was put on round the dining room or parlors; no center-pieces at all put on; only two to three feet of basement wall taken out six feet high. Lee set but two grates; walls were not lathed. Witness don't think he had any talk with defendant in the Chambers House in relation to stucco work, as stated by Grundy; don't know of any agreement between Higgins and Lee that the stucco work should not be done. It was agreed between Higgins and witness, after the plastering was done, that stucco work should be dispensed with, for the reason that there was not time to do it. Plaintiff had a man there who put some mouldings around one door, and made an arch of stucco over a passage way; he was a very long time doing it, and it was very badly done. It has usually been the case that when river sand was used, the plastering would fall off.

Defendant examined George Low, who testified, that the plastering fell off badly; it was thick, and had very little hair in it; some fell down from the sides where it never got wet; some fell off without getting wet.

Defendant then called A. G. Shepard, who testified, that Higgins had paid plaintiff $2,047 and some cents, less a credit of $12.75, and that Lee said the account was all correct except about $30, which he claimed was a mistake.

Plaintiff handed witness, who was clerk for defendant, a bill for extra work, which was credited to him in his presence, amounting to $69.75.

Defendant then called J. Mullany, who testified, that it was worth one dollar per running foot to put on the cornice in the dining room; was 198 feet. The three center-pieces in dining room worth $15 each; cornice in hall worth seventy-five cents a foot; was 162 feet; center-pieces in hall worth $10 each. Plastering not equal to that required by specifications; lath were put on entirely too thick; there was not hair enough in the plaster. The sand was not fit to use; could crush up the mortar in my hand. There was not a wall in the house hard-finished fit to receive paint; not a room in the whole building where the plastering had not fallen off more or less. The whole work being worth $2,000, the stucco work was worth the prices before named and fixed by me.

Defendant then called Mr. Jones, who testified, that he had been a plasterer for thirty years; that neither the material or work comported with the specifications. The lath were too close; there was too little hair in the mortar. The sand is very poor; what we call quicksand. The stucco work mentioned in the contract is worth $400. The plastering has come

off in every room, not only on the ceilings, but on the side walls; would rather have the mortar off the building than on it. This was the substance of the testimony.

Defendant's fifth instruction was as follows:

"By the contract, in this case, the plaintiff was bound to lath all the halls, rooms and closets on the first and second floors of the building, and all the rooms, halls, passages, apartments, closets and stairs on the third floor, the attic and the basement, as well on the brick walls as on the partition walls of the same; and if the lathing on the brick wall was dispensed with by the understanding of the parties, then the jury should deduct from the contract price the *pro rata* value of such lathing, if it was not worth as much to do the work in the way it was done, as it would have been to have done it according to the contract." To which the plaintiff asked this qualification: "It might be the law, if defendant had pleaded or given notice of set-off, but under the general issue, which is the only issue in this case, the jury can deduct nothing from the contract price for not lathing the walls," which qualification was neither marked, given, or refused, but was handed to the jury by the court with the other instructions.

The eighth instruction of the defendant is as follows:

"That if Higgins did not object to the materials used in the plastering, yet, unless it is proved that he was called on to approve or disapprove such materials, the fact that he did not object does not preclude him from insisting and proving that such materials were not such as the contract required, and having damages allowed to him on account of the insufficiency of such materials."

V. H. Higgins, W. Chumasero, and B. Cook, for Appellant.

W. H. S. Wallace, for Appellee.

Scates, C. J.  Where it is apparent, as it is here, that the jury must have misunderstood, or disregarded the evidence or instructions of the court, or neglected properly to consider the facts, or overlooked prominent and essential points in them, and have failed to do substantial justice, we are compelled to set the verdict aside and grant a new trial.  *Wendell* v. *Safford's Executor*, 12 N. Hamp. R. 171; *Inhabitants of Bangor* v. *Inhabitants of Brunswick*, 27 Maine R. 351; *Gordon* v. *Crooks*, 11 Ill. R. 142.

A new trial will be granted also, for misdirections of the court on the law, or for withholding proper instructions, material to the case.  We must treat the qualifications asked by plaintiff

below to defendant's fifth instruction, as of the former character, and under the circumstances reported in the bill of exceptions, as given by the court. Giving the paper to the jury, containing it amongst others given, and without remarks, or marking it refused, was calculated to mislead them. The qualification asked should have been refused, and the eighth instruction asked by defendant below should have been given. The contract specified that the materials should be the best, and approved before used, and when obtained, Lee should have asked their inspection and approval. Higgins may not be required to watch from day to day, for this purpose, or else be concluded as approving. If used without, it must be at the risk of Lee, who had specially agreed to furnish the best. The qualification asked by Higgins to Lee's third instruction, scarcely differs from the modification given by the court. We waive the expression of any opinion upon Lee's first and fourth instructions, believing the matters therein clearly settled by the evidence ; and having no references to authorities on the argument, we do not deem the matter of sufficient importance to this case, to call for such an examination as would satisfy us to sanction or disapprove the rule here laid down. The court laid down the law in the various instructions given, and we are not able to account for the verdict, either upon the facts or the law.

The plaintiff in error had a right to recoup his damages sustained by reason of poor materials and inferior workmanship, and under the general issue, by way of reducing the amount of the recovery, under the *quantum valebant*, and *quantum meruit* counts ; and by the amount of the damages so sustained, being deducted from the value of the labor and materials, as fixed proportionately to what is done by the terms of the contract. Decisions to this effect, and upon a great variety of facts and circumstances, fully sustain the rule. *Low* v. *Forbes*, 14 Ill. R. 423 ; *Koon* v. *Greenman*, 7 Wend. R. 121 ; *Epperly* v. *Bailey*, 3 Porter Ia. R. 72 ; *McKinney* v. *Springer*, ibid. 59 ; *Manville* v. *McCoy*, ibid. 248 ; *Farmer* v. *Francis*, 12 Iredell L. R. 282 ; *Blood* v. *Enos*, 12 Vermont R. 625 ; *Merrow* v. *Huntoon and Dow*, 25 Vermont R. 9 ; *Hayward* v. *Leonard*, 7 Pick. R. 180 ; *Bowker* v. *Hoyt et al.*, 18 Pick. R. 555 ; *Barber* v. *Rose*, 5 Hill R. 76 ; *Shaw* v. *Badger*, 12 Serj. and Rawl. R. 275 ; *Western* v. *Sharp*, 14 B. Monroe R. 177.

Proofs and allegations must correspond. The instrument was not truly described in its material parts, and could not be read under the special count upon it. Where performance is alleged at the day, proof of performance under a parol enlargement, is not sufficient. *Littler* v. *Holland*, 3 Term R. top 324, bottom 581 ; *Smith* v. *Brown*, 3 Blackf. R. 22.

Neither will excuse for non-performance be received. *Crandall* v. *Clark*, 7 Barb. S. C. R. 169; *Wathan* v. *Penebaker*, *guardian*, 3 Bibb R. 99. Averment of demand, at a party's usual place of residence, is not sustained by proof of demand at his still-house. 3 Bibb R. 267.

The specifications and plans are embraced within the terms of this contract, and Lee's engagement bound him to do all the work on the walls and partitions, etc.; according to the plans and specifications. To allow him to confine it in its meaning, to the state of the walls, partitions, etc., on the day of its execution, does look to us like assisting him to commit a fraud upon the other party.

·.All questions and inquiries, with a view to convert into extra work, what is so palpably included, were wrong, and should have been excluded.

Judgment reversed, and cause remanded for new trial.

*Judgment reversed.*