[See Case No. 13,773.]

## Case No. 14,773.

### UNITED STATES v. CHAFFEE et al.

[2 Bond, 147.] [1]

Circuit Court, S. D. Ohio. Feb. Term, 1868.

NEW TRIAL—VERDICT AGAINST EVIDENCE—JOINT ACTION—WEIGHT OF EVIDENCE—CUMULATIVE EVIDENCE—CORRUPT JUROR.

1. A motion for a new trial is an appeal to the discretion of the court, and if there are any grounds for the apprehension that injustice has been done to the defendants, by a verdict for a large amount found against them by the jury, and that a different result would follow from a second trial, it is the duty of the court to grant it.

2. If, in a joint action of tort, a verdict is rendered against all the defendants, when as to one there was no evidence, it is a verdict against evidence, and may be set aside on that ground.

3. Where, in an action in tort, against several defendants, they sever in their pleas, and assert different defenses to the suit, if a verdict is returned against all, and there is no testimony against one, the case may be non prossed as to him, and judgment entered against the others.

4. There are authorities that where the plea is joint this may be done, but as to that point there is some conflict. If this was the only ground of exception to this verdict the court would overrule it, and refuse a new trial upon the agreement of the district attorney to enter a nolle prosequi as to William M. Chaffee.

5. Where a jury give credence to the testimony of two witnesses for the United States as against the testimony of nine unimpeached witnesses for the defendants, they decide against the weight of the evidence, and it is a ground for a new trial.

6. The doctrine is, that testimony merely cumulative does not, in general, afford a sufficient ground for a new trial, but in a case of great importance, involving large interests, courts have given a liberal construction to the rule, and received such testimony on an application for a new trial.

7. The law does not tolerate the slightest taint of corruption, or the least impropriety of conduct on the part of a juror, and proof that one juror has disregarded the obligations resting upon him and has acted corruptly so infects a verdict with fraud as to make it a nullity.

[This was an action of debt by the United States against Highland D. Chaffee and others for the penalty for the illegal manufacture of whisky. See Case No. 14,772. There was a verdict in favor of the United States for $253,200. Case unreported. The case is now heard upon motion for new trial.]

Durbin Ward, Dist. Atty.

Job E. Stevenson, for defendants.

LEAVITT, District Judge. This is a motion, by the defendants, to set aside the verdict returned in this case, and for a new trial. There are numerous grounds stated as the predicate of this motion. In stating the conclusions of the court, it will not be necessary to notice, in detail, all the grounds set forth in the motion on file. I shall refer only to those that seem to be conclusive as to the proper action of the court.

It may be remarked, preliminarily, that the suit was instituted jointly against the defend-

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

ants, for an alleged fraud committed by them, in failing, as distillers, to make due returns of, and pay the duties upon, whisky manufactured by them at their distillery at Tippecanoe, in this state. whereby, they incurred a penalty of four dollars a gallon on the spirits which they did not return, and on which they did not pay the legal duty. On the trial, the district attorney abandoned the first and second counts of the declaration, and the case was submitted to the jury on the third count only. which alleged, in substance, that, between February 1. 1865. and September 1. 1866, the defendants manufactured and had on hand twenty-four thousand nine hundred gallons of distilled spirits, subject to a duty of two dollars on each gallon, which they fraudulently sold or disposed of, without making a return of the same, and without paying the legal tax thereon; whereby they incurred a penalty of four dollars on each gallon, amounting in the whole to $99,600. The defendants joined in a plea of not guilty, and the case was submitted to the jury on that issue. After a prolonged and laborious investigation of the facts, and extended arguments of counsel, the jury returned a verdict against the defendants for $253,200. It may be aptly remarked here that on a motion to set aside a verdict for so large a sum, involving, as it does, the entire pecuniary means of all the defendants. and so largely in excess of the amount claimed by the United States, on the count of the declaration upon which the case was put to the jury, the court is under stringent obligations to exercise some measure of liberality in passing on the motion for a new trial. The motion is an appeal to the discretion of the court, and if there are any grounds for the apprehension that injustice has been done to the defendants in the large amount found against them by the jury, and that a different result would follow from a second trial, it is the duty of the court to grant it.

One reason prominently urged by the defendants' counsel as a ground for the present motion, is that the verdict is excessive, and against the weight of the evidence. In support of this reason, it is urged, first, that against William M. Chaffee, one of the defendants, there was no evidence implicating him in the alleged fraud; second, that as against the other defendants, the verdict is greatly in excess of the amount for which the defendants, from the weight of the testimony, can be held liable. In reference to the verdict as against the defendant. William M. Chaffee, it is not controverted by the counsel for the United States, that there was no evidence which connected him with the alleged frauds. It is clear from the testimony that the evidence did not justify a verdict against him, and that as to him the verdict should have been not guilty. In its charge to the jury, the court distinctly stated that if they found the evidence of the fraud charged did not prove the fact as to one or more of the defendants, and that the other defendants were guilty, they were authorized to return their verdict to meet that case. The jury, acting on the principle, as the court is advised, that as all the defendants had joined in a plea of not guilty, all were jointly responsible if fraud was made out against any of them, returned their verdict, without any discrimination in favor of William M. Chaffee. Now, the law is, that if, in a joint action, a verdict is rendered against all the defendants. when as to one there was no evidence, it is a verdict against evidence, and may be set aside on that ground. But it is proposed by the district attorney in case the verdict shall not be set aside, to enter a nolle prosequi as to William M. Chaffee, and take a judgment against the other defendants. The question whether a nolle prosequi can be entered, and judgment taken on the verdict against the other defendants, has been investigated by counsel, and many authorities have been cited in their briefs. I do not propose to notice the numerous references made to the books touching this question. I have, however, carefully looked at the authorities, and find they are not harmonious on the point. Where, in an action in tort against several defendants, they sever in their pleas, and assert different defenses to the suit, if a verdict is returned against all, and there is no testimony against one or more, the case may be non prossed as to such, and judgment entered against the others. There are authorities that where the plea is joint this may be done. But as to that point there is some conflict.

If this was the only ground of exception to this verdict, the court would overrule it and refuse a new trial, upon the agreement of the district attorney to enter a nolle prosequi as to William M. Chaffee. I shall now consider the question whether the verdict is against the weight of evidence as to all the defendants. And, on this point, it may be proper to observe that the question is not whether the United States, on the evidence, was entitled to a verdict, but whether, in estimating the evidence and finding so large an amount against the defendants by the jury, their verdict is not against the preponderance of the testimony.

As before stated, the claim of the United States is that the defendants, between the dates mentioned, manufactured whisky largely in excess of the quantity returned for taxation, and on which the duties were paid. And evidence was offered to the jury of large quantities shipped by them to various points by railroads and by canals. The quantity thus shipped greatly exceeded the quantity returned for taxation. This excess, as claimed by the district attorney, was about 1,245 barrels, and he contended that the defendants were liable to the penalty of $4 per gallon on the quantity. It must be conceded that the evidence on which this estimate was based was not of the most conclusive character. The government resorted to the only mode by which the shipments could be proved, namely, the freight books of the canal collectors and

the books and papers of different railroad offices, and of the commercial houses to which the whisky had been consigned. From the character of this evidence, the liability to a duplication of the shipments, and other errors liable to occur from the extent of the transactions, it was obvious to the court that it was not of the most reliable character. The jury supposed they were justifiable in the conclusion that the quantity of whisky shipped by defendants was greatly beyond that returned as made, and on which the duties were paid, and for this excess they returned their verdict, estimating such excess at $4 per gallon, producing a total of upward of $250,000. On the trial, the government, in offering testimony in chief, examined two witnesses upon the question whether the defendants had any whisky on hand in the fall of 1865. In their defense, the counsel for the defendants assumed that the defendants at that date had a large quantity on hand, which had been duly inspected, but was retained by them for sale in expectation of a more favorable state of the whisky market. And they claimed that the quantity thus proved to be on hand, deducted from the excess of shipments above the quantity returned for taxation, and on which the taxes were paid, would leave but a small deficiency on which the tax had not been paid. And they claim on this motion that the jury erred in not estimating by their verdict the whisky on hand, and in returning a verdict for the whole difference between the whisky shipped and that on which the tax had been paid, and that thus the amount of the verdict was excessive and unjust. Without reviewing the authorities on this point, it is only necessary to say, it is not only within the just discretion of the court to grant a new trial, but its imperative duty to do so, if the jury have misconceived the testimony in the matter referred to, or returned a verdict against the weight of that testimony. Now, as to the whisky on hand in the fall of 1865, as before noticed, two witnesses were examined by the United States. One testified positively there was none, and one negatively that he saw none. There were some unimportant facts urged to the jury, as corroborative of this evidence. On the other hand, there were eight or nine witnesses for the defendants who testified that they saw a large quantity on hand upon the premises of the defendants. The estimates of the witnesses as to this quantity varied from 1,000 to 1,500 barrels. With one exception, there was no attempt to impeach the credibility of these witnesses.

It would seem the jury, in making their verdict, made a deduction of 190 barrels, as on hand in November, 1865, and rejected the testimony of the defendants proving a much larger quantity. Now, from the above statement, it is obvious in doing this they decided against the weight of evidence on the point adverted to. They seem to have given credence to the two witnesses for the government, while they repudiated the testimony of the nine for the defendants. Where this was probably the case, it is a ground for a new trial. 27 Me. 357; 16 Ill. 495; 3 Grah. & W. New Trial, 1208; 5 Ohio, 245; 13 Mass. 507. In connection with the objection to the verdict, that it is against the weight of the evidence as to the quantity of whisky on hand at the time referred to, it may be proper to add that on this motion for a new trial, the defendants have offered the affidavits of some ten or fifteen persons, residents of Tippecanoe, where the distillery is located, or its vicinity, to the effect that having the opportunity of knowing the fact, there was on the premises of the defendants a large quantity of whisky prior to, and in the autumn of 1865. These persons were not witnesses at the trial, and their statements may be said to be cumulative in their character, and, therefore, not to be considered on this motion. The doctrine is assented to, that testimony merely cumulative does not in general afford a sufficient ground for a new trial. But in a case of great importance and involving large interests, courts have sometimes given a liberal construction to the rule, and received such testimony on an application for a new trial. If its effect, in the present case, is to show beyond any reasonable doubt, that the defendants had a large stock of whisky on hand in October, 1865, it may be considered on this motion. 3 Grah. & W. New Trial, 1055, and the authorities there cited. Every principle of justice seems to sustain this doctrine as applicable to the motion before the court, and leaves no doubt in the mind of the court that a new trial ought to be granted in this case.

There are other facts disclosed by the affidavits filed by the defendants in support of this motion, which are entitled to consideration, and are not without weight in its decision. To these I propose briefly to advert: It appears from the affidavit of Christopher Huffman that he was summoned and examined on the trial, as a witness for the defendants, and stated that he did not then recollect of any liquor being in the back grain-room; that after he left the witness-stand he remembered the fact that there was grain in that room, and requested to be recalled, and the defendants wished him to remain in the city till next morning for that purpose; that having been severely injured by the railroad accident near Lockland, and fearing his family would be anxious about him, he returned to his home at Tippecanoe, intending to come back to Cincinnati in time to be re-examined; but after getting home his wound became so much worse that he was unable to return. The affiant accounts for his failure to remember the fact adverted to, when examined as a witness, from his excitement and his severe bodily pain at the time. It is impossible for the court to know what influence the testimony of the witness might have had on the minds of the jury. But the fact which he failed to remember when examined, was pertinent to

the issue and important for the defendants. Without any negligence or default on their part they were deprived of the benefit of the witness' testimony by the occurrence of a providential event, beyond their control. Under such circumstances, even a possibility that his evidence would have produced an effect with the jury favorable to the defendants, affords a strong reason for giving them the benefit of his testimony on a retrial of the case. The affidavit of John Gunn also discloses facts tending clearly to the conclusion that justice demands that the case should be submitted to another jury for consideration. The affiant states that he was summoned as a witness by the United States, and examined as such on the trial; that after his examination he was summoned by the defendants as a witness in their behalf; that in coming from his home at Tippecanoe, he was so severely injured by the railroad disaster near Lockland, that he was unable to appear in court during the progress of the trial; that he would have sworn as a witness that in the fall of 1865, and for some time previously, the defendants had a stock of whisky on hand, though he can not state precisely how much. This is another instance of the defendants being deprived of what may have been very important testimony in their behalf, as the result of the railroad accident, and without any negligence on their part.

There is also an important fact appearing from the affidavits of Truman L. Trask and H. R. Landmier, composing the firm of Landmier & Trask, who, in 1866, were commission merchants in Cincinnati. On the trial, Landmier was examined as a witness for the government, and proved a shipment of 150 barrels of whisky to the house in July, 1866, by the defendants. He was not then able to state the date when the whisky was received, the canal-boat on which it was shipped, or any other particulars relating to the transaction. He now states that since his examination as a witness, he is enabled to remember the date of the receipt of the whisky, the canal-boat on which it was shipped, and the quantity received. He also distinctly remembers that the 150 barrels of whisky shipped to his house by the defendants was bonded whisky. Trask says in his affidavit that he bought the whisky of the defendants on July 17, 1866, as in bond; that it was shipped on the canal-boat Marie Louise, consigned to Grotenkemper & Co., of Cincinnati, who had a bonded warehouse, and received a few days after the date named; that the 150 barrels, after being inspected, were sold. This affidavit also states that during the latter part of the trial of this case, he was ill and away from home for two weeks, and was unable to attend to business until the trial was closed. There is every reason to suppose that on the testimony submitted to the jury, they included in their estimate of whisky shipped by defendants, on which the tax was unpaid, the 150 barrels purchased by Landmier & Trask, being bonded whisky, and which was consigned to the bonded warehouse of Grotenkemper & Co., and which, after being inspected, was sold. It could not be sold without the tax being first paid; and if paid, it was clearly erroneous to charge the defendants with the penalty of $4 per gallon on this whisky. This would be an item of about $36,000, to which, upon the supposition that the tax has been paid, the defendants were not liable. If there are reasonable grounds for the inference that this error has occurred in the verdict of the jury, if there were no other grounds for a new trial, it would, of itself, be sufficient reason for a retrial of the case. The facts disclosed by the affidavits may be classed under the head of newly discovered evidence, which, when material, is always a ground for a new trial. 1 Grah. & W. New Trial, 492; 3 Grah. & W. New Trial, 1049, 1057.

It is unnecessary to pursue this view any further. Motions for new trials are addressed to the sound discretion of the court; and this discretion, by all the more modern decisions, is more liberally exercised than formerly. At this day the courts grant new trials freely where it appears reasonably certain that the verdict is against the weight of evidence, or a party has been surprised at the trial, or has been deprived of his evidence by accident or other similar cause. And this is especially the case in suits where the amount involved is large, or the character of parties implicated. Kohne v. Insurance Co. of North America [Case No. 7,921]. In the case just cited—Kohne v. Ins. Co. of North America—the remarks of Mr. Justice Washington on the subject of new trials are very clearly stated and are cheerfully adopted as the views of this court. The learned judge says: "I certainly shall always respect the opinion of the jury, so far as not to set aside their verdict in a doubtful case, because I might have drawn a conclusion different from what they have done. But, if the verdict be plainly against evidence, or if, in a case of great consequence, as this certainly is, where some doubt might exist as to the correctness of the conclusions drawn by the jury, it would seem right that the case should be more deliberately argued and considered by another; it is certainly most consistent with the objects of justice to afford such an opportunity. I can not conceive how the granting of a new trial can impair the benefits of a jury trial. If by setting aside the verdict the consequence would be a judgment contrary to it, the position would be correct, but this is not the case. The cause is merely reheard before a new jury, when it may be more deliberately considered." As, in my judgment, a new trial should be granted on the grounds referred to, it is wholly unnecessary to refer to or consider all the other reasons stated in the motion of the defendants' counsel.

There is one other ground urged by the defendants for a new trial, to which it will be proper to advert. This is, the alleged corrupt attempt of one of the jurors to procure from the defendants a pecuniary reward as a consideration for his influence and efforts to obtain a verdict favorable to them. I do not propose to notice the facts before the court in reference to this charge. I am gratified in stating that there is no direct imputation of corruption as against any other member of the jury than the one referred to. And I am clear in stating that if the facts alleged against him are satisfactorily proved, it would be a sufficient ground for setting aside the verdict. The law does not tolerate the slightest taint of corruption or the least impropriety of conduct on the part of a juror, charged under oath to render a just verdict according to the law and the evidence. And proof that even one juror has disregarded the solemn obligation resting upon him, and has acted corruptly, so infects a verdict with fraud as to make it a nullity. But in looking at the facts before the court, touching the conduct of the juror referred to, the charge is not so clearly established as to justify the conclusion of his guilt. While there are certainly grounds of suspicion against him, the circumstances proved leave his guilt so doubtful as not to afford a proper predicate for the action urged by the defendants' counsel in relation to the pending motion. And as other reasons stated are sufficient in the judgment of the court to set aside the verdict and award a second trial, there is no necessity for a more extended notice of the ground now referred to.

I will just add, in conclusion, that the features of this case seem to require the exercise of liberality in passing on the motion for a new trial. The verdict of the jury is for a very large amount, and implicates the defendants as guilty of an enormous fraud upon the government. If there is any reasonable ground for the inference that upon a second trial the defendants can show that their liability has been exaggerated, and relieve their characters from the dark shadow now resting upon them, it is but just and equitable, for the reason indicated, that they should have the opportunity of doing so. The government will suffer nothing by the delay resulting from a second trial. It should ask for nothing from any of its citizens to which it is not justly and legally entitled; and if a wrong has been committed these defendants, the representatives of the government should rejoice in having it rectified. There can be no ground of complaint in awarding a new trial, in which the case may be submitted to another impartial jury. A new trial is awarded on payment, by the defendants, of all the costs which have accrued in the case. These costs to be paid within thirty days.

[NOTE. Upon the new trial the jury found a verdict against the defendants for the sum of $235,680. Case No. 14,774. From the judgmet entered upon this verdict a writ of error was sued out in the supreme court, which reversed the judgment and remanded the case for a new trial. 18 Wall. (88 U. S.) 516.]