SIXTH DIVISION
March 10, 2006

No. 1-05-0496

| | | |
|---|---|---|
| MICHAEL F. ROTI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| SAMUEL J. ROTI, | ) | Honorable |
| | ) | Paddy H. McNamara, |
| Defendant-Appellee. | ) | Judge Presiding |

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Michael Roti sued his cousin Samuel Roti for breach of contract and on a theory of promissory estoppel. The trial court dismissed the complaint, holding that the Frauds Act (740 ILCS 80/2 (West 1996)) barred the claim because Michael sought an interest in lands without a signed contract to support the claim. In a proposed amended complaint Michael pled that he sought only a percentage of the profit Samuel earned from sale of land. In the alternative, Michael sought relief in *quantum meruit*. The trial court disallowed the amendment.

We agree with the trial court that the Frauds Act barred the original complaint. Michael's judicial admissions in the initial complaint defeat the contract and estoppel claims in the amended complaint. Michael also failed to plead facts that could support a finding that Samuel paid Michael less than the reasonable value of his services, so the proposed amendment did not state a claim in *quantum meruit*. Therefore we affirm the trial court's

judgment.

BACKGROUND

Michael and Samuel worked together in the real estate business for several years without a written contract.  Michael took a regular salary from the business for most of those years.  After they stopped working together in 2001, Samuel paid Michael an additional $247,561.

Michael filed this lawsuit in September 2004.  He alleged:

"In the fall of 1996, Samuel approached Michael about joining him in the real estate business.  Samuel promised Michael equivalent pay plus 10% of Samuel's interest in the current real estate and all future real estate ventures if Michael would come to work with him. ***

*** Over the next four years, Michael performed substantial legal, accounting, tax and management services for Samuel personally, as well as for each of the real estate properties and other potential projects and business opportunities.

* * *

***  Michael was forced from the business *** in the fall of 2001.

***  Michael and Samuel then had discussions regarding the value of Michael's 10% interest in the real estate. ***

1-05-0496

> \*\*\*
>
> \*\*\* Samuel told Michael that his 10% interest was worth only $247,561 and prepared a writing setting forth how he calculated this amount.  A copy of that writing is attached as Ex. A.
>
> \* \* \*
>
> \*\*\* Michael \*\*\* fully performed all of his obligations under the agreement prior to being forced from the business.
>
> \* \* \*
>
> \*\*\* Michael detrimentally relied on Samuel's promise in devoting his time and efforts to this relationship to come and work with Samuel."

Exhibit A to the complaint had no heading.  We set out its content in full:

> "W/R
>
> | 3,731,205 | Net Monies |
> | 59,901 | Reproration |
> | 3,791,108 | |
> | - 350,000 | Bills |
> | 3,441,108 | |
> | 1,998,496 | Downpayment 1.3 mil. + 10% interest |
> | 1,442,612 | |
> | | 10% |
> | 144,[261].00 | |

1-05-0496

W T

5,000,000        Value

2,856,953        Mor[t]gage

2,143,047

  236,912        R.E. Taxes

1,906,135

  230,596        Downpayment 150,000 + 10% interest

1,675,539

   50,000        C[los]ing Cost 1%

1,625,539

_____    10%

  162,554.00


Boca

5,000,000        Value

4,500,000        mor[t]gage

  500,000

   50,000        Closing Cost 1%

  450,000

_____10%

   45,000.00


W/R        +144,261

W T        +162,554

ˇ4ˇ

1-05-0496

    Boca      + 45,000

          +351,815.00                +351,815.00


    Overpay MR          -289,140

    paiD Back MR         +55,556

                -233.584      -233,584


    SR total pay      -1,533,300

    4 x 60,000.00 per yr. -240,000

        SR over pay    1,293,300

            10%

                129,330    +129,330



                MR    +247,561"

Samuel moved to dismiss the complaint under section 2-619(a)(7) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(7) (West 2004)).  The court granted the motion, finding that Michael pled an unenforceable oral contract for the transfer of an interest in land.

Michael sought leave to file an amended complaint.  In the proposed amendment he alleged:

"Samuel promised Michael that, if Michael would leave his practice and join Samuel in business, that he and Michael would take equivalent pay from the income of the business and share the profits of the real estate

developments that their venture would engage in, Samuel taking 90% of the net profits and Michael taking 10% of the net profits."

He again sought to recover for breach of contract and on a theory of promissory estoppel. He added counts for equitable estoppel, partnership accounting and *quantum meruit*. The trial court denied leave to amend and made the dismissal of the complaint final and appealable. Michael filed this timely appeal.

ANALYSIS

I

We review *de novo* the decision to dismiss the complaint. <u>Carroll v. Paddock</u>, 199 Ill. 2d 16, 22 (2002). When the trial court dismisses the complaint under section 2-619, "the question on appeal is whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law." <u>Illinois Graphics Co. v. Nickum</u>, 159 Ill. 2d 469, 494 (1994).

The Frauds Act provides:

"No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized

in writing, signed by such party."  740 ILCS 80/2 (West 1996).

In the complaint Michael alleged that Samuel promised him "10% of Samuel's interest in the current real estate and all future real estate ventures."  The agreement alleged in the original complaint does not involve payment of a brokerage commission.  Compare Real Estate Buyer's Agents, Inc. v. Foster, 234 Ill. App. 3d 257, 259 (1992).   The agreement appears akin to the written option contracts at issue in Hartbarger v. SCA Services, Inc., 200 Ill. App. 3d 1000, 1009-10 (1990).  We agree with the trial court's conclusion that Michael seeks to enforce an agreement for the transfer of an interest in real estate within the meaning of the Frauds Act.  See Goldstein v. Nathan, 158 Ill. 641, 647-48 (1895).

Michael claims that Exhibit A appended to his complaint comports with the requirements of the Frauds Act.  The statute requires that the writing bear the signature of the party against whom the court enforces the contract.  740 ILCS 80/2 (West 1996). Marks of many different sorts may qualify as signatures, as long as the mark "manifests that the instrument has been executed or adopted by the party to be charged by it"  Just Pants v. Wagner, 247 Ill. App. 3d 166, 173 (1993).  We agree with the reasoning of a California court that distinguished signatures from uses of a name for identification:

"[S]ubscription does not require that the signature

appear at the end of the instrument, nor that it be handwritten. The name of the party will satisfy the statutory requirement if it were intended as a signature, i.e., as an authentication, but not if it appears for some other purpose, as for mere identification." (Emphases omitted.) Rader Co. v. Stone, 178 Cal. App. 3d 10, 23, 223 Cal. Rptr. 806, 812 (1986).

In Vess Beverages, Inc. v. Paddington Corp., 941 F.2d 651 (8th Cir. 1991), the plaintiff's officers met with the defendant's officers to discuss a proposal for sale of one of the defendant's subsidiaries to the plaintiff. One of the defendant's officers took notes at the meeting and included his own initials in the notes. The plaintiff claimed that the parties agreed to the sale of the subsidiary, and it argued that the notes sufficed to meet the requirements of the statute of frauds. The appellate court held:

"[T]he signer must sign with intent to indicate that the document is his. *** [I]nitials written as part of an attendance list do not qualify even as authentication of the writing. *** [T]o hold for [the plaintiff] would mean that in future one who took notes at a meeting would risk a lawsuit for breach of contract if he or she happened to include an attendance list at the top. We do not believe the Statute of

1-05-0496

Frauds permits such a result.

    [The plaintiff] argues that the mere fact that the notes are in [the officer's] handwriting counts as a signature. [The plaintiff] cites no case or treatise that supports this proposition, nor have we been able to find any through independent research. *** If [the officer] had initialed them with intent to identify the notes as his or *** with intent to approve the terms of the agreement, the agreement would be enforceable. Since he did not, we have no choice but to hold the agreement unenforceable." <u>Vess</u>, 941 F.2d at 655.

    Here, Michael contends that Samuel signed Exhibit A by writing:

"SR total pay     -1,533,300

4 x 60,000.00 per yr. <u>-240,000</u>

   SR over pay   1,293,300"

We disagree. The use of SR in this exhibit at most identifies the numbers on the same line. The exhibit cannot support a finding that by writing "SR" on the exhibit, Samuel intended to execute or adopt the document as his own. Thus, Michael proffered no signed document evidencing the alleged contract for transfer of an interest in land.

    Michael argues that the Frauds Act does not bar his complaint because he performed his duties under the contract. The United States Court of Appeals for the Seventh Circuit

˘9˘

explained the performance exception to the statute of frauds:

"Unilateral performance is pretty solid evidence that there really was a contract--for why else would the party have performed unilaterally? *** [I]f a party performs first there is some basis for inferring that he had a contract. *** The partial-performance exception to the statute of frauds is often explained (and its boundaries fixed accordingly) as necessary to protect the reliance of the performing party, so that if he can be made whole by restitution the oral contract will not be enforced." Monetti, S.P.A. v. Anchor Hocking Corp., 931 F.2d 1178, 1183-84 (7th Cir. 1991).

Illinois courts have concluded that employment contracts usually do not qualify for the performance exception to the Frauds Act:

"Before a contract is taken out of the statute of frauds, partial performance must be of such a character that it is impossible or impractical to place the parties in status quo or restore or compensate the party performing for what he has parted with or the value of his performance ***. Normal employment contracts, such as the one here, do not involve this kind of performance. To allow the fact that an employee worked and was paid for part of the duration of the contract to act as such a bar would make the relevant

provision of the Statute of Frauds meaningless. Any contract where the employee had started work and received a paycheck would be protected from the application of the statute." Mariani v. School Directors of District 40, 154 Ill. App. 3d 404, 407 (1987).

See also Prodromos v. Howard Savings Bank, 295 Ill. App. 3d 470, 476 (1998).

Michael relies on three cases as authority for applying the performance exception to the employment contract alleged in this case. In the first, Payne v. Mill Race Inn, 152 Ill. App. 3d 269, 278 (1987), the court noted that the performance exception to the Frauds Act did not apply to employment contracts and distinguished the oral contract for sale of the plaintiff's business from employment contracts.

The second case, Noesges v. Servicemaster Co., 233 Ill. App. 3d 158 (1992), involved an oral contract for the plaintiff to develop one specific computer software package in exchange for a salary plus $200 for each software package the defendant sold. After the plaintiff developed the software in less than a year, the defendant refused to pay the plaintiff the agreed sums. The appellate court noted that the Frauds Act did not apply both because the plaintiff completed his obligations in less than a year, and because the plaintiff fully performed his limited obligations. The contract for the development of a single

specified product appears very unlike Michael's alleged employment contract for many varied services for an indefinite period.

In the third case Michael cites, Reiss v. El Bauer Chevrolet Co., 96 Ill. App. 2d 266 (1968), the defendant orally promised to pay an annual bonus, based on sales for the year, to each salesman who worked to the end of the fiscal year. The plaintiff stopped working for the defendant following the end of the fiscal year in 1966, and the defendant refused to pay the plaintiff his annual bonus. The defendant, who interposed the Frauds Act as a defense to the plaintiff's suit for the bonus, argued that the plaintiff could not fully perform his duties as a salesman within one year. The trial court rejected the defense. The appellate court affirmed, and it stated as a general principle: "The Statute of Frauds is no defense to an executed contract of employment ***." Reiss, 96 Ill. App. 2d at 269.

The result in Reiss appears correct, because the plaintiff could fully perform the obligations that entitled him to the annual bonus within one year. However, the general principle stated in Reiss seems irreconcilable with more recent cases, including Mariani, Prodromos and Payne. That case law supports the trial court's decision to dismiss the claim for breach of the alleged employment contract.

In the complaint Michael seeks added compensation, in the form of an interest in real estate, for the work he performed for

Samuel.  Since Michael admitted that Samuel paid him more than $400,000 for his work, we see no grounds for inferring that he must have had an oral contract for yet more compensation.  See Monetti, 931 F.2d at 1183-84.  Michael's performance of his duties as an employee does not present adequate grounds in these circumstances for finding an exception to the Frauds Act.  We affirm the dismissal of the breach of contract count from the initial complaint.

The count for promissory estoppel also fails.  "[I]n order to trump the Statute of Frauds, a party must invoke the doctrine of equitable estoppel, which differs from promissory estoppel in that the party asserting it must additionally allege words or conduct amounting to a misrepresentation or concealment of material facts."  Cohn v. Checker Motors Corp., 233 Ill. App. 3d 839, 845 (1992).  Because Michael has not alleged that Samuel misrepresented or concealed material facts to induce Michael to work for him, the court properly dismissed the count based on promissory estoppel.

## II

Next, Michael argues that the court erred by disallowing his proposed amended complaint.  We will not reverse a decision on a motion for leave to amend a complaint unless the trial court has abused its discretion.  Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill. 2d 263, 273-74 (1992).  To determine the issue, we must consider:

"(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." Loyola, 146 Ill. 2d at 273.

In the proposed amendment Michael sought to change the terms of the alleged contract. According to the original complaint, Samuel promised to give Michael "10% of Samuel's interest in the current real estate and all future real estate ventures." In the proposed amendment Michael alleged instead that Samuel promised "he and Michael would *** share the profits of the real estate developments that their venture would engage in, Samuel taking 90% of the net profits and Michael taking 10% of the net profits."

The trial court did not address the issue of whether the Frauds Act would bar recovery on the promise alleged in the amended complaint. At the hearing on the motion for leave to amend, the trial court explained the denial of the motion:

"THE COURT: ***

What you did say [in the initial complaint] was that it was an agreement for an interest in land ***. Are you going to change your theory as to what it is?

[Plaintiff's counsel]: No, your Honor, I don't

think I am.

     THE COURT:  In the [proposed amended] complaint
you say it is a partnership agreement instead of a sale
of land.

                         * * *

     [Plaintiff's counsel]:  I don't think I am
changing it, your Honor, I really don't.

     THE COURT:  Well I do.  I think you are stuck with
what I did."

The trial court effectively treated the allegations of the
original complaint as judicial admissions that Michael could not
contradict in later pleadings.

Our supreme court explained the doctrine of judicial
admission:

     "Judicial admissions are defined as deliberate,
     clear, unequivocal statements by a party about a
     concrete fact within that party's knowledge.
     [Citation.]  Where made, a judicial admission may not
     be contradicted in a motion for summary judgment
     [citation] or at trial [citation].  The purpose of the
     rule is to remove the temptation to commit perjury."
     In re Estate of Rennick, 181 Ill. 2d 395, 406-07
     (1998).

Generally, "[a]llegations contained in a complaint are judicial
admissions and are conclusive against the pleader."  Calloway v.

1-05-0496

<u>Allstate Insurance Co.</u>, 138 Ill. App. 3d 545, 549 (1985); see

<u>Baker v. Daniel S. Berger, Ltd.</u>, 323 Ill. App. 3d 956, 963

(2001).

The terms of Michael's oral agreement with Samuel must fall within Michael's knowledge, and he unequivocally alleged the concrete fact that Samuel agreed to give him an interest in real estate in exchange for his agreement to work with Samuel. The trial court properly held that Michael in his complaint judicially admitted that he sought to enforce a contract for transfer of an interest in real estate. In light of the judicial admissions, the Frauds Act defeats the counts for breach of contract and promissory estoppel in the proposed amended complaint. The new count based on equitable estoppel also fails to state a viable claim because Michael still does not allege that Samuel fraudulently induced him to enter the contract. See <u>Cohn</u>, 233 Ill. App. 3d at 845.

Michael also added counts for partnership accounting and for *quantum meruit*. He argues that the Frauds Act does not apply to joint ventures because "[a] written agreement is not required to form a joint venture and the existence of a joint venture may be inferred from a variety of facts and circumstances." <u>Russell v. Klein</u>, 33 Ill. App. 3d 1005, 1007 (1975). While parties may orally contract to form a joint venture, "the statute [of frauds] is applicable to the joint venture agreement if the partners agree to share the proceeds of a sale of land that is owned by

one partner alone." B & B Land Acquisition, Inc. v. Mandell, 305 Ill. App. 3d 1068, 1073 (1999). The Frauds Act renders unenforceable the alleged oral joint venture agreement for Samuel to give Michael an interest in his real estate. See Goldstein, 158 Ill. at 647-48. Accordingly, the count for partnership accounting in the proposed amended complaint fails to state a viable claim.

Courts that have found oral employment contracts unenforceable have pointed to *quantum meruit* as the proper remedy. E.g., Fischer v. First Chicago Capital Markets, Inc., 195 F.3d 279, 284 (7th Cir. 1999). To state a cause of action for *quantum meruit*, a plaintiff must allege facts that show "the performance of services by the party, the conferral of the benefit of those services on the party from whom recovery is sought, and the unjustness of the latter party's retention of the benefit in the absence of any compensation." First National Bank of Springfield v. Malpractice Research, Inc., 179 Ill. 2d 353, 365 (1997). A court deciding whether a proposed complaint states a cause of action should "accept[] as true all well-pleaded facts and all reasonable inferences that can be drawn therefrom." Palmer v. Chicago Park District, 277 Ill. App. 3d 282, 284 (1995). However, the court need not accept conclusions unsupported by specific factual allegations. Classic Hotels, Ltd. v. Lewis, 259 Ill. App. 3d 55, 60 (1994).

Michael alleged that he performed legal and accounting

services for Samuel from 1996 until 2001. He also admitted that Samuel paid him more than $400,000 for those services. In the count for *quantum meruit*, Michael alleged:

> "Michael provided valuable services from which Samuel profited greatly.
>
> *** Michael has not received the reasonable value of his services.
>
> *** It would be unjust to allow Samuel to retain the value of Michael's services without paying the reasonable value of those services."

Michael relies solely on his conclusory allegations for his cause of action. We find no specific factual allegations in the proposed amended complaint that could support the conclusion that Samuel paid less than the reasonable value of Michael's services. Thus, the proposed amended complaint fails to state a cause of action in *quantum meruit*. Because Michael failed to present an amended complaint that stated any viable cause of action, the trial court did not abuse its discretion by denying Michael leave to amend his complaint. See <u>Kittay v. Allstate Insurance Co.</u>, 78 Ill. App. 3d 335, 339 (1979).

III

The Frauds Act bars Michael from recovering for breach of the alleged oral contract for the conveyance of an interest in real estate. Michael received substantial compensation for the services he performed, so his performance does not support an

inference that he must have had an oral contract for more compensation. Moreover, the performance doctrine does not apply to remove this contract for indefinite employment from the operation of the Frauds Act. The bare allegation of reliance on an oral promise does not overcome the strictures of the Frauds Act, so the court correctly dismissed the count for promissory estoppel.

Judicial admissions in the original complaint defeated most counts of the proposed amended complaint. The proposed amendment failed to state facts that could support an inference that the reasonable value of Michael's services exceeded the amounts Samuel paid for those services. Because the proposed amendment failed to state a claim based on *quantum meruit*, the trial court did not abuse its discretion by denying leave to amend. Accordingly, we affirm the dismissal of the complaint and the denial of the motion for leave to amend.

Affirmed.

TULLY and O'MALLEY, JJ., concur.