K. MILLER CONSTRUCTION COMPANY, INC., Plaintiff-Appellant, v. JOSEPH J. McGINNIS *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—08—2514

Opinion filed August 10, 2009.

GORDON, ROBERT E., P.J., specially concurring.
WOLFSON, J., dissenting.

Robbins, Salomon & Patt, Ltd., of Chicago (Richard Lee Stavins and Vitaly Gashpar, of counsel), for appellant.

Gomberg, Sharfman, Gold & Ostler, P.C., of Chicago (Raymond J. Ostler and Nazia J. Hasan, of counsel), for appellees.

JUSTICE GARCIA delivered the opinion of the court:

In 2000, the Illinois legislature passed the Home Repair and Remodeling Act (Home Repair Act or the Act) (815 ILCS 513/1 *et seq.* (West 2006)), declaring it "unlawful" for a contractor to "charge for remodeling or repair work before obtaining a signed contract or work order over $1,000." 815 ILCS 513/30 (West 2006). The Act decrees that "the business of home repair and remodeling is a matter affecting the public interest." 815 ILCS 513/5 (West 2006). The stated aim of the legislation is to improve "communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers[, which] will increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices in that business in this State." 815 ILCS 513/5 (West 2006). In the course of passing the legislation, elected representatives made clear that a purpose of the Act is to protect vulnerable citizens from disreputable home repair operations.

In this appeal, the only open question is whether the legislature's declaration that oral contracts falling under the Home Repair Act are "unlawful" means that the equitable remedy of *quantum meruit* is foreclosed in an action between a well-established contractor and a sophisticated consumer (a lawyer), where no allegation is made that the contractor engaged in anything other than a fair and honest practice, and where, based on the allegations of the complaint, the contractor took out a construction loan to complete the project, which, after a "walk-through" was approved by the consumer. In other words, did the legislature, in seeking to protect "uninformed" citizens against disreputable contractors, intend to bar all contractors, including those

that would otherwise not fall within the group of home repair operations that spurred the legislature into passing the Act, from seeking any remuneration in a court of equity?

We acknowledge that the Fourth District of the Appellate Court in *Smith v. Bogard*, 377 Ill. App. 3d 842, 879 N.E.2d 543 (2007), held that a *quantum meruit* claim is barred by the Act. Based on our own analysis of the language in the Act, we conclude that the term "unlawful" is not a clear and plain expression of legislative intent to *repeal* the common law remedy of *quantum meruit* in the context of the home repair and remodeling industry. Therefore, *quantum meruit* remains an equitable remedy available under the Home Repair Act and Miller may pursue its claim against the McGinnises, where the nature of the remedy itself provides ample protection against abuses the passage of the Act was meant to address.

## BACKGROUND

When the McGinnises decided to remodel their Chicago property in the fall of 2004, they contacted Miller about the construction. Miller's sole owner was, at the time, a friend of the McGinnises, who had performed remodeling work for them on other property in 1997. The parties reached an oral agreement for the work, but never reduced it to writing. In its complaint, Miller alleged that the McGinnises initially agreed to pay $187,000 for the remodeling work, consistent with a written proposal from another construction company the McGinnises displayed to Miller. Much like many homeowners undergoing a remodeling project, the McGinnises decided to expand the scope of the project significantly in 2005 with a corresponding increase in the construction price, ultimately reaching slightly more than $500,000, according to Miller's second amended complaint. Because of the expanded plans, the McGinnises obtained a new building permit in January 2005, which provided for the expanded scope of the remodeling project.

The McGinnises paid Miller's initial invoices totaling $65,000. However, in September 2005, they refused to pay a $58,000 invoice-to-date, stating they would not make any further payments until the project was completed. Because Miller could not complete the project without additional capital, Miller obtained a $150,000 line of credit to pay for materials and subcontractors.

In 2006, Miller completed the project in accordance with the expanded plans. The McGinnises conducted a "walk-through" of the property and approved of all the construction work, asking only for a $300 credit to address minor floor damage. The McGinnises made some further payments to Miller, but refused to exceed payments above $177,580.33.

Miller filed a three-count complaint against the McGinnises in October 2006. Miller alleged it provided labor, materials, and services with an unpaid balance due from the McGinnises. In count I of the complaint, Miller alleged that it was entitled to a lien on the property in the amount of the unpaid balance based on the parties' oral contract. In count II, Miller sought recovery of the unpaid balance based upon the McGinnises' breach of the oral contract. In count III, Miller sought compensation for its labor, materials, and services on a *quantum meruit* theory. The McGinnises did not file an answer to the complaint. Rather, the McGinnises filed a motion to dismiss the complaint, arguing that the three counts were legally insufficient under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)) because Miller failed to obtain a written contract before it began work as required in section 30 of the Act (815 ILCS 513/30 (West 2006)) and, independently, count III failed to sufficiently allege the elements of *quantum meruit*. Judge Bartkowicz dismissed the original complaint, but granted Miller leave to file an amended count III. Miller filed a second amended complaint, with an amended count III and pled anew counts I and II, to preserve them for review. The McGinnises filed a nearly identical section 2—615 motion to dismiss, which no longer challenged the legal sufficiency of the *quantum meruit* allegations. Judge Bartkowicz granted the motion to dismiss all counts as barred by the Act. This timely appeal followed.

## ANALYSIS

### I. Standard of Review

Judge Bartkowicz granted the McGinnises' motion to dismiss all counts of Miller's second amended complaint as barred by the Act, pursuant to section 2—615.[1] *Springfield Heating & Air Conditioning, Inc. v. 3947-55 King Drive at Oakwood, LLC*, 387 Ill. App. 3d 906, 909, 901 N.E.2d 978 (2009). A section 2—615 motion to dismiss challenges the legal sufficiency of a complaint. *Springfield Heating*, 387 Ill. App.

---

[1]Miller argues the motion should have been filed under section 2—619(a)(7) (735 ILCS 5/2—619(a)(7) (West 2006)), because the Act is the equivalent of a statute of frauds and as such is an "affirmative matter." See *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 306, 888 N.E.2d 54 (2008) (section 2—619 motion filed for failure to comply with Act). We proceed with our review based on the statutory section cited by the McGinnises' motion because no claim of prejudice is raised by Miller. See *Schwanke, Schwanke & Associates v. Martin*, 241 Ill. App. 3d 738, 743, 609 N.E.2d 654 (1992) (dismissal should be vacated if motion cites wrong section to the plaintiff's prejudice). Review under either section is *de novo*. See *Financial Freedom v. Kirgis*, 377 Ill. App. 3d 107, 122, 877 N.E.2d 24 (2007).

3d at 908. On review, " 'all well-pleaded facts are taken as being true and all reasonable inferences from those facts are drawn in favor of the plaintiff.' " *Springfield Heating*, 387 Ill. App. 3d at 908-09, quoting *Luise, Inc. v. Village of Skokie*, 335 Ill. App. 3d 672, 685, 781 N.E.2d 353 (2002). Dismissal is proper if the complaint's allegations, viewed in the light most favorable to the plaintiff, are insufficient to state a cause of action upon which relief can be granted. *Springfield Heating*, 387 Ill. App. 3d at 909. Our standard of review is *de novo*.

■ Section 15 of the Act requires persons "engaged in the business of home repair or remodeling" to provide customers with "a written contract or work order" prior to beginning work on a project with a cost over $1,000. 815 ILCS 513/15 (West 2006). This is reiterated in section 30:

> "It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause as required in Section 15 and Section 15.1 of this Act." 815 ILCS 513/30 (West 2006).

Our primary objective in interpreting this statute is to "ascertain and give effect to the intent of the legislature." *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184, 902 N.E.2d 667 (2009). "The best indication of legislative intent is the statutory language given its plain and ordinary meaning." *Kinzer*, 232 Ill. 2d at 184.

## II. Contentions on Appeal

Miller raises two substantive contentions: (1) Miller was entitled to recover on the lien foreclosure and breach of contract claims; and (2) Miller was entitled to recover on the *quantum meruit* claim.

## A. Oral Contract

■ We find no merit to Miller's contention that his lien foreclosure claim in count I and his breach of contract claim in count II can stand in the face of the plain language of the Act that bars recovery for work that exceeds $1,000 on a residence without a written contract or work order. 815 ILCS 513/30 (West 2006). Counts I and II in Miller's second amended complaint are based on proof of the parties' oral contract. Miller cites no authority for its contention that the Act does not apply to "time and materials" oral contracts. Miller argues that time and materials contracts are exempt from the Act because "it is impossible for parties to prepare 'a written contract or work order that states the total costs.' " We find the argument untenable. "Nothing in the Act

precludes a contractor from providing an updated estimate or work order as the circumstances may warrant." *Central Illinois Electrical Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545, 549, 831 N.E.2d 1169 (2005), *appeal denied*, 217 Ill. 2d 559, 844 N.E.2d 36 (2005). In the absence of a written contract or work order, Miller's time and materials oral contract is unenforceable under the Act. See *Smith v. Bogard*, 377 Ill. App. 3d 842, 848, 879 N.E.2d 543 (2007) (Fourth District) (violations of the Act support the dismissal of the breach of contract claim); *Central Illinois Electrical Services*, 358 Ill. App. 3d at 550 (Third District) (judgment for electrical contractor on mechanic's lien reversed with directions that the circuit court proceed in accordance with the Act).

Nor do we agree with Miller's argument that full performance provides it safe harbor from the Act's bar. Although Miller's full performance would satisfy the traditional Frauds Act (740 ILCS 80/1 *et seq.* (West 2006); *Meyer v. Logue*, 100 Ill. App. 3d 1039, 1043-44, 811 N.E.2d 738 (1981)), full performance cannot avoid the requirements of a statute enacted separately from the Frauds Act (*Machinery Transports of Illinois v. Morton Community Bank*, 293 Ill. App. 3d 207, 210-11, 687 N.E.2d 533 (1997); *McAloon v. Northwest Bancorp, Inc.*, 274 Ill. App. 3d 758, 763-64, 654 N.E.2d 1091 (1995)).

Finally, we do not find persuasive Miller's invocation of the maxim of statutory interpretation, *expressio unius est exclusio alterius* (to express one thing implies the exclusion of the other), for its contention that the presence of the "list of penalties and enforcement measures for violation of the [Act]" should be interpreted as excluding the "voiding or nullification of contracts." See generally *Metzger v. DaRosa*, 209 Ill. 2d 30, 44, 805 N.E.2d 1165 (2004). The use of "void" in section 15.1 of the Act provides no support for Miller's claim that section 30 of the Act does not bar oral contracts.

Because section 30 of the Act bars the enforcement of an oral contract as "unlawful," we affirm Judge Bartkowicz's dismissal of counts I and II in Miller's second amended complaint.

## B. *Quantum Meruit*

We now turn to Miller's claim that the Act does not bar the common law equitable remedy of *quantum meruit*. Miller, recognizing that *Smith*'s holding expressly bars a *quantum meruit* claim under the Act, contends *Smith* was wrongly decided.

To ensure that decisions of the appellate court, often a court of last resort, are consistent with the state of the law, parties are free to contend that a decision by a sister district is wrongly decided. As Justice Alloy noted in his dissent in a case in which the supreme court

ultimately upheld Justice Alloy's view of the case: "The appellate court[ ] of this State [has], historically, vigorously chartered courses for modifications or improvement in the equitable principles applicable in cases without being limited by any previous opinion which may have been rendered in another district." *Joiner v. Janssen*, 84 Ill. App. 3d 462, 466, 405 N.E.2d 835 (1980) (Alloy, P.J., dissenting), *rev'd*, 85 Ill. 2d 74, 421 N.E.2d 170 (1981). As he noted, there is no component to the doctrine of *stare decisis* that mandates we follow the decision of a court of equal stature. *Janssen*, 84 Ill. App. 3d at 465 (Alloy, P.J., dissenting). See *Owens v. Snyder*, 349 Ill. App. 3d 35, 811 N.E.2d 738 (2004) (where a division of the First District disagreed with results reached in decisions by the Second District). Our review of the Act is independent of the conclusion reached by *Smith*.

Rejecting *Smith*, Miller contends that, even if the Act renders the oral contract unenforceable, *quantum meruit* recovery of the reasonable value of its services remains an available remedy to prevent the McGinnises' unjust enrichment. The McGinnises counter that the legislature's declaration that an oral contract under the Act is "unlawful" forecloses all equitable remedies, effectively wiping out *any* recovery for services a contractor performed in the absence of a written contract or work order, no matter the circumstances.

## 1. Illinois Jurisprudence

■ We note the McGinnises do not challenge the sufficiency of the Miller's *quantum meruit* claim in its second amended complaint. "To recover under a *quantum meruit* theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) defendant accepted this service, and (4) no contract existed to prescribe payment for this service." *Installco, Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 781, 784 N.E.2d 312 (2002), citing *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 913, 710 N.E.2d 861 (1999). *Quantum meruit* recovery is unavailable where the parties have an express contract on which the *quantum meruit* claim rests. *Installco*, 336 Ill. App. 3d at 781. Miller alleged that he performed a nongratuitous, beneficial service, which the McGinnises accepted after a "walk through." See *Roti v. Roti*, 364 Ill. App. 3d 191, 201, 845 N.E.2d 892 (2006) (allowing *quantum meruit* claims where employees' oral employment contracts were unenforceable).

*Quantum meruit* literally means " 'as much as he deserves.' " *Rohter v. Passarella*, 246 Ill. App. 3d 860, 866, 617 N.E.2d 46 (1993), quoting Black's Law Dictionary 649 (abr. 5th ed. 1983). "The common law adopted the term to describe a cause of action which seeks to recover the reasonable value of services which have been nongratu-

itously rendered, but where no contract exists to prescribe exactly how much the [plaintiff] should have been paid." *Rohter*, 246 Ill. App. 3d at 866.

A search of the term *"quantum meruit"* in the electronic database of Illinois case law reveals the earliest decision addressing *quantum meruit* was published in 1833. *County of Vermilion v. Knight*, 2 Ill. 97 (1833). Of the 832 cases returned on the search, more than 90% predate the enactment of the Act in 2000. On these figures alone, it is fair to state that *quantum meruit* has a long and vigorous history in Illinois jurisprudence. The observation by Justice Holmes, in a different context, may have some application here: "If a thing has been practised for two hundred years by common consent, it will need a strong case *** to affect it ***." *Jackman v. Rosenbaum Co.*, 260 U.S. 22, 31, 67 L. Ed. 107, 112, 43 S. Ct. 9, 9-10 (1922).

Before *Smith*, Illinois common law has consistently upheld the right of an aggrieved party to proceed on a claim under *quantum meruit* in the interest of doing justice. "The law creates obligations 'on the ground that they are dictated by reason and justice.' " *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334, 371 N.E.2d 634 (1977), quoting *People v. Dummer*, 274 Ill. 637, 641, 113 N.E. 934 (1916). "In the absence of an enforceable agreement, the law will find that the recipient of the services implicitly promised to compensate his provider for the benefit received." *Rohter*, 246 Ill. App. 3d at 866. Under *quantum meruit*, a plaintiff is able to recover the reasonable value of his services to ensure that the beneficiary of those services is not "unjustly enriched by his ability to retain an unintended largess." *Rohter*, 246 Ill. App. 3d at 866.

However, a contractor's recovery is not unlimited, as our supreme court made clear more than a century and a half ago in a case where the parties disputed the value of the services rendered, the contractor claiming $2,000, the property owner claiming $400. "The plaintiff in error had a right to recoup his damages sustained by reason of poor materials and inferior workmanship, and under the general issue, by way of reducing the amount of the recovery, under the *quantum valebant*, and *quantum meruit* counts; and by the amount of the damages so sustained, being deducted from the value of the labor and materials, as fixed proportionately to what is done by the terms of the contract." *Higgins v. Lee*, 16 Ill. 495, 501 (1855). In other words, under *quantum meruit*, the litigation issue is the reasonable value of the services rendered. *Rohter*, 246 Ill. App. 3d at 866, quoting *Ellis v. Photo America Corp.*, 113 Ill. App. 3d 493, 500, 447 N.E.2d 852 (1983) (under *quantum meruit*, " 'the measure of recovery is the reasonable value of plaintiff's services' ").

Outside the context of the Act, no party disputes that a trial on the *quantum meruit* claim will render justice to both Miller and the McGinnises. There is also no question that the reasonable value of the services rendered by Miller remains hotly contested by the McGinnises. "Of course, while presenting their case, defendants are free to offer evidence which denies, rebuts, controverts or otherwise explains plaintiff's proof on the reasonable value of services rendered." *Rohter*, 246 Ill. App. 3d at 868. If the McGinnises are able to demonstrate poor materials or inferior workmanship, then of course a fact finder's assessment of the reasonable value of the services Miller provided will be far less than Miller claims. In this sense, where the consumer only pays for the reasonable value received, allowing parties to litigate a *quantum meruit* claim is not inconsistent with promoting fair and honest practices in the business of home repair and remodeling, the public policy declared in the Act. See 815 ILCS 513/5 (West 2006).

We detect no disagreement by our esteemed colleague in dissent to what we have stated thus far. Our paths diverge in our respective interpretation of the scope of the Act: did the legislature, with the use of the word "unlawful," really mean to reduce the legal landscape of our common law, built up over the years, by eliminating the equitable remedy of *quantum meruit*? In neither Justice Wolfson's dissent nor in the *Smith* decision is there a contention that the legislature ever had in mind "*quantum meruit*" in declaring oral contracts "unlawful" under the Act. Certainly, nothing revealed so far of the legislative history of the Act in the published cases provides support for such a suggestion. See *Thomas P. Valenti, P.C. v. Swanson*, 294 Ill. App. 3d 492, 495, 690 N.E.2d 1031 (1998) ("There is no mention of *quantum meruit* in [the legislative discussions or other parts of the legislative history]. Accordingly, we are unable to say that there is an express legislative intent to preclude such recovery").

## 2. Repeal of Common Law

■ Under Illinois jurisprudence, when confronted with a contention that the intent of legislation is to *repeal* a common law remedy, our supreme court noted the force of the common law remains unless expressly modified:

> "Common law rights and remedies are in full force in this state unless repealed by the legislature or modified by the decision of our courts. [Citations.] A legislative intent to abrogate the common law must be clearly and plainly expressed and such an intent will not be presumed from ambiguous or doubtful language." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 518, 687 N.E.2d 21 (1997).

Unlike the view taken by our colleagues in the Fourth District, to which, we believe, weight is added with Justice Wolfson joining their

view, we find no clear and plain intent in the Act to do away with *quantum meruit,* an equitable remedy that is a part of our common law going back to the times when Abraham Lincoln practiced in our courts. See *County of Vermilion v. Knight,* 2 Ill. 97 (1833); *Higgins v. Lee,* 16 Ill. 2d 495 (1855).

Whether the legislature intended to repeal the common law remedy of *quantum meruit* in passing the Act was noted by our supreme court as an open question in *MD Electrical Contractors, Inc. v. Abrams,* 228 Ill. 2d 281, 306, 888 N.E.2d 54 (2008). Justice Garman, writing for the majority, found the *quantum meruit* issue to have been forfeited. *MD Electrical Contractors,* 228 Ill. 2d at 299 ("the *quantum meruit* issue presented to this court is not properly presented by the record in this case and is therefore forfeited"). Justice Freeman, in his dissent, noted that neither the appellate court nor the circuit court decisions below "engaged in any analysis on the question of whether the legislature intended, by virtue of the Act's passage, to abolish the common law remedy of *quantum meruit." MD Electrical Contractors,* 228 Ill. 2d at 306 (Freeman, J., dissenting, joined by Burke, J.). Justice Freeman stated in a footnote that, whether "the legislature intended to abolish the common law remedy of *quantum meruit,"* along with whether the Act provides for a private cause of action[2], are *"the* important questions under the Act." (Emphasis in original.) *MD Electrical Contractors,* 228 Ill. 2d at 309 n.5 (Freeman, J., dissenting, joined by Burke, J.). That *Smith* was *not cited* at that point in the dissent suggests that the analysis in *Smith* does not answer the *quantum meruit* question before us to everyone's satisfaction. We reiterate our obligation to independently determine whether *quantum meruit* remains available under the Act. The outcome of our analysis is not foreclosed by the holding in *Smith* because we do not find the analysis persuasive.

### 3. The *Smith* Decision

In *Smith,* decided after the legislature's most recent amendment to the Act, the court rejected the contractor's attempt to recover for work he completed on a *quantum meruit* theory. The Fourth District concluded that permitting *quantum meruit* recovery "would run afoul of the legislature's intent of protecting consumers, would reward deceptive practices, and would be violative of public policy." *Smith,* 377 Ill. App. 3d at 848, citing *American Home Assurance Co. v. Golomb,* 239 Ill. App. 3d 37, 41, 606 N.E.2d 793 (1992); *Townsend v. Fassbinder,* 372 Ill. App. 3d 890, 902, 866 N.E.2d 631 (2007). The court

---

[2]The issue of a private cause of action under the Act is not raised by Miller before us.

suggested that even if equitable remedies were permitted under the Act the contractor could not recover because the "unclean hands" doctrine would preclude equitable recovery. *Smith*, 377 Ill. App. 3d at 848, citing *Townsend*, 372 Ill. App. 3d at 902.

While the Fourth District made clear its holding, little was offered to support its reasoning that *quantum meruit* recovery "would run afoul of the legislature's intent." *Smith*, 377 Ill. App. 3d at 848. No mention was made of our supreme court's pronouncement that "Common law rights and remedies are in full force in this state unless *repealed* by the legislature or modified by the decision of our courts." (Emphasis added.) *Maksimovic*, 177 Ill. 2d at 518, citing 5 ILCS 50/1 (West 1994) (Act adopting the common law of England). "A legislative intent to abrogate the common law must be clearly and plainly expressed." *Maksimovic*, 177 Ill. 2d at 518. Repeal of a common law remedy "will not be presumed from ambiguous or doubtful language." *Maksimovic*, 177 Ill. 2d at 518. *Smith* does little to explain how the Act's language "clearly and plainly expressed" the legislature's intent to preclude *quantum meruit* recovery. See *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038, 735 N.E.2d 662 (2000) ("A statute that is in derogation of the common law is strictly construed in favor of the person sought to be subjected to its operation"). As we make clear below, our reading of the Act reveals no clear and plain language to meet the standard under *Maksimovic*.

Nor does *Smith* explain how the "unclean hands" doctrine, generally disfavored by Illinois courts, works to preclude equitable recovery. In the case before us, there is no suggestion that Miller, in seeking to recover reasonable value for the services it provided, would be " 'taking advantage of [its] own wrong.' " *Smith*, 377 Ill. App. 3d at 848, quoting *Townsend v. Fassbinder*, 372 Ill. App. 3d 890, 902, 866 N.E.2d 631 (2007). That Miller did not "put it in writing," as the obvious is noted by the dissent (394 Ill. App. 3d 268), is not, in our view, the equivalent of wrongdoing by Miller under the "unclean hands" doctrine. See *Ellis*, 113 Ill. App. 3d at 498 ("unclean hands" doctrine only defeats equitable remedies when a plaintiff is "guilty of misconduct in connection with the very transaction at issue" and the "misconduct, fraud or bad faith" is directed at the party that raises the equitable defense). There is no suggestion that Miller's intent was fraudulent or that it acted in bad faith in failing to offer a written contract or work order. The "wrong" Miller committed was not directed at the McGinnises, but joined in by them. In fact, it may well be that a consumer with Mr. McGinnis' background may be inclined to join such a "wrong" to gain an unjust enrichment from an honest, but uninformed, contractor.

The reasoning in *Smith* does not persuade us that Miller is precluded from pursuing recovery of the reasonable value of his work based solely on legislation declaring an oral contract "unlawful" because *Smith* does not explain how *quantum meruit* recovery "would reward deceptive practices, and would be violative of public policy." *Smith*, 377 Ill. App. 3d at 848, citing *Golomb*, 239 Ill. App. 3d at 41. The goal of the Act is to eliminate "deceptive practices" by declaring oral contracts unlawful; an oral contract by itself is not a deceptive practice.

The citation to *Golomb* for the proposition that where a void contract results, a court will leave parties where they have placed themselves, leaves us equally puzzled. *Smith*, 377 Ill. App. 3d at 848, citing to *American Home Assurance Co. v. Golomb*, 239 Ill. App. 3d 37, 41, 606 N.E.2d 6793 (1992). The court in *Golomb* made clear that not every violation of the type before it "justifies the voiding of a contract." *Golomb*, 239 Ill. App. 3d at 42. Agreements may be enforced where the violations of the rule of professional responsibility are only " 'minor technical deficiencies.' " *Golomb*, 239 Ill. App. 3d at 42, quoting *Cross v. American Country Insurance Co.*, 875 F.2d 625, 628-29 (7th Cir. 1989). While the deficiencies before us can in no wise be seen as minor, they may amount to nothing more than "technical deficiencies" where unfair and dishonest conduct to be curtailed by the Act is not at play.

Nor are we convinced that allowing a *quantum meruit* claim to go forward "would 'defeat[ ] the entire purpose of the [Home Repair] [A]ct and the public policy behind it' " as the *Smith* court quoted the concern of the circuit court below. *Smith*, 377 Ill. App. 3d at 844. It is a false choice to suggest that we must choose between the law as written in the Act and a fair result, as put by Justice Wolfson (394 Ill. App. 3d 266) in his dissent, which we take as a concession that a fair result would flow from an adjudication of the *quantum meruit* claim.

In sum, we are unpersuaded by the reasoning in *Smith* that the language in the Act leads inevitably to the repeal of *quantum meruit* recovery. The *Smith* holding fails to address the long history of *quantum meruit* in Illinois common law. Unlike *Smith*, we see the limited recovery available under *quantum meruit*, which also prevents an unjust enrichment to a consumer, as a means of providing a contractor the ability to recover the reasonable value of the services he rendered, consistent with the stated purpose of the Act of promoting fairness between the contractor and the consumer. Nor does it appear that the *Smith* court considered that rejecting *quantum meruit* recovery could provide an incentive to consumers to engage in "deceptive practices" by reneging on an oral promise to pay contractors for

remodeling work completed. Finally, the *Smith* court does not point to any specific public policy, at least to our satisfaction, that would be violated by allowing a court of equity to balance the claim of contractors against the defenses of consumers in the litigation of a claim of *quantum meruit*, which limits recovery by contractors to reasonable value and allows consumers to prove the use of poor materials or inferior workmanship.

## 4. "Unlawful"

To be clear, it is not fairness that drives our decision. The real question before us is whether the legislature intended to *repeal* the equitable remedy of *quantum meruit* in passing the Act. This question, we submit, is distinct from enforcement of the Act's declaration that certain oral contracts are "unlawful" in the home repair and remodeling industry in Illinois. Our reading of the provisions in the Act that oral contracts are "unlawful" does not lead us to the conclusion reached by the Fourth District in *Smith*, joined in by Justice Wolfson.

The use of the term "unlawful," with its unhelpful definition of that which is "Not authorized by law" (Black's Law Dictionary 1536 (7th ed. 1999)), does not convey a clear expression by the legislature that it intended to repeal more than a century of common law.[3] The term "unlawful" is not unlike a "broad, general statement of policy," which has been found inadequate to justify an exception to a well-established common law doctrine. See *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 502, 911 N.E.2d 548, 554 (2009) ("A broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment"), citing *Corbin v. Sinclair Marketing, Inc.*, 684 P.2d 265, 267 (Colo. App. 1984). We note that in *Corbin*, the reviewing court characterized as "unlawful" conduct that the plaintiff alleged violated certain Colorado statutes. *Corbin*, 684 P.2d at 267. While it appears the term "unlawful" was not contained within the statutes under review, the court's characterization of the conduct as unlawful did not aid the plaintiff in pursuing his claim. The Colorado Court of Appeals affirmed the lower court's dismissal of the plaintiff's wrongful discharge action. *Corbin*, 684 P.2d 265. So too here, that certain oral contracts are "unlawful" under the Act does not persuasively lead to the conclusion that the equitable remedy of *quantum meruit* is barred by the Act. We are aware of no decision by our supreme court that supports reading a single term in

---

[3]While *Senese v. Village of Buffalo Grove*, 383 Ill. App. 3d 276, 278, 890 N.E.2d 628 (2008), interprets the phrase "unlawful act," we found no case addressing the scope of "unlawful."

legislation under review as conveying the very specific intent to repeal an equitable remedy under our common law. "To construe the statute otherwise would be to repeal, by mere implication, a rule of the common law of great convenience and highly promotive of justice." *Smith v. Laatsch*, 114 Ill. 271, 279, 2 N.E. 59 (1885). We reject the implication that the legislature's use of the term "unlawful" meant to reach deep into Illinois jurisprudence and render decisions of Illinois courts over the past century and a half nullities in the context of home repair and remodeling. The use of the term "unlawful" is at best ambiguous and doubtful as a means of conveying legislative intent to abrogate the common law.

Because we find the language in the Act to fall short of the required showing under *Maksimovic*, we are unconvinced that a repeal of common law was intended by the Illinois legislature. We reject the dissent's logic that our conclusion that the Act leaves undisturbed the equitable remedy of *quantum meruit* is the equivalent of allowing courts of equity to "sanitize" (394 Ill. App. 3d at 267) an oral contract declared to be unlawful by the Act. No contract, oral or written, is a part of a claim under *quantum meruit*. See *Installco*, 336 Ill. App. 3d at 781. Rather, a recovery under *quantum meruit* allows courts of equity to do what such courts have always done: equity between the litigating parties. This allows a fair and honest contractor to recover the reasonable value of his services. The equitable remedy of *quantum meruit* recovery is not violative of Illinois public policy expressed by the Act, which seeks to prevent deceptive practices by barring contractors from recovering the contract value for services. See *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 601, 740 N.E.2d 501 (2000) (the terms of an express contract control the compensation due).

Although common law rights that "deprive [a] statute of its efficacy" will be abolished (*Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 634, 872 N.E.2d 551 (2007)), we perceive no disharmony between the Act and *quantum meruit* recovery. The aim of the Act to "increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices" by improving communication between contractors and consumers (815 ILCS 513/5 (West 2006)) is not violated when a contractor, that fully performs to the satisfaction of the consumer, collects the reasonable value of his services. To hold otherwise would provide cover under law to a consumer's dishonest refusal to pay for services rendered, an outcome that would increase disputes and business costs. Consistent with the aim of the Act, *quantum meruit* limits a contractor's recovery to no more than he deserves for his work. In fact, to allow a

homeowner to be unjustly enriched at the hands of an honest contractor may well be at odds with the public policy behind the Act.

Nor does the legislative history reveal any notion of an intent on the part of legislators to repeal the equitable remedy of *quantum meruit* with the passage of the Act. According to the floor debates, the Act was designed to deal with contractors that "prey on seniors [and] homeowners after disasters" (91st Ill. Gen. Assem., House Proceedings, May 20, 1999, at 17 (statements of Representative Fritchey)), and those who "simply go up and down the street looking for the elderly, looking for the unprotected, looking for the uninformed" (91st Ill. Gen. Assem., House Proceedings, May 20, 1999, at 20 (statements of Representative Winters)). Rejecting Miller's claim would only penalize a reputable contractor, who, relying on a past business relationship and friendship with the consumer, performed remodeling work to the consumer's satisfaction, with no involvement of predatory remodeling practices the Act sought to address. Miller's conduct does not violate the policy behind the Act; we find nothing in the provisions of the Act that indicates a clear intention by the legislature that Miller be barred from seeking equitable relief through *quantum meruit*.

We also note that Mr. McGinnis' professional background appears to place him outside the set of citizens the Act was meant to protect. Taking as true the complaint's factual allegations (*Springfield Heating*, 387 Ill. App. 3d at 908-09), Mr. McGinnis is an attorney that has actively practiced in real estate since 1970. A similarly situated consumer may well utilize his expertise in the field to exploit the strict construction of the Act by the *Smith* court. Certainly an attorney is well informed of the safeguards a written contract provides. A consumer in Mr. McGinnis' situation could well decide it is to his advantage to keep an agreement with a contractor on an oral basis. Such a consumer, after receiving the benefit of the contractor's services, could use the Act, meant as a shield to protect vulnerable consumers, as a sword to deprive a contractor of the reasonable value of his services. The potential for such a consumer to corrupt the Act makes it doubtful, in the absence of clear intent to the contrary, that the legislature meant to abrogate a *quantum meruit* claim by a contractor.

### 5. Analogy to Credit Agreements Act

The McGinneses analogize the Home Repair Act to the Credit Agreements Act (Agreements Act) (815 ILCS 160/0.01 *et seq.* (West 2006)), which courts have held precludes common law equitable remedies. *Machinery Transports*, 293 Ill. App. 3d at 210-11; *McAloon*, 274 Ill. App. 3d at 763-65. We take little guidance from the Agree-

ments Act cases because the language in the Agreements Act is not similar to that in the Home Repair Act. Equitable remedies were found barred by the Agreements Act based on the provision of the Agreements Act that bars lawsuits, a provision which has been properly described as "broadly worded." *Machinery Transports*, 293 Ill. App. 3d at 210, citing *McAloon*, 274 Ill. App. 3d at 765.

The Home Repair Act does not contain the broad language in the Agreement Act that prohibits actions "on or in any way related to" oral credit agreements. 815 ILCS 160/2 (West 2006). The *McAloon* court reasoned that because the Agreements Act barred any and all actions at law, traditional equitable remedies, such as equitable estoppel, are also barred. *McAloon*, 274 Ill. App. 3d at 764-65. The language in the Home Repair Act is far less reaching. Its language is limited to a simple declaration that an oral contract is "unlawful" for repair or remodeling work above $1,000. The contractor is thus barred from recovering on the basis of an oral contract. We do not read the term "unlawful" as equivalent to a provision barring suits "on or in any way related to" oral credit agreements.

The McGinnises' analogy to the Agreements Act decisions is also unpersuasive because the published decisions have involved circumstances "where no unjust enrichment" occurred. *Machinery Transports*, 293 Ill. App. 3d at 211. To the extent an honest and fair contractor is captured in the net of the Home Repair Act, unjust enrichment by the consumer may be the norm, rather than the exception. To bar any recovery by such a contractor would, as described in *Machinery Transports*, be "offensive to [the] court and would offend most of our citizenry as well." *Machinery Transports*, 293 Ill. App. 3d at 210.

■ This case may well present the situation feared by the *Machinery Transports* court. Accepting the allegations in Miller's complaint as true, there is little question that the McGinnises have accepted the benefit of the services rendered by Miller and they would be unjustly enriched if the *quantum meruit* claim is barred. *Quantum meruit* is ideally suited to prevent such enrichment by providing for the recovery of the reasonable value of Miller's services. See *Rohter*, 246 Ill. App. 3d at 866. Proceedings on the merits of Miller's *quantum meruit* claims will address the McGinnises' concerns regarding the fair price of Miller's services, while ensuring that a contractor whose work the consumer accepted will receive just compensation.

Finally, to paraphrase our esteemed colleague in dissent, every once in a while a reviewing court has to choose between following a decision by a sister court and independently analyzing the state of the law. Based on our independent analysis of the Home Repair Act, we conclude that the use of "unlawful" is a term too ambiguous and

doubtful to convey legislative intent *to repeal* the equitable remedy of *quantum meruit*. Having determined what the law is, we follow it.

We reverse Judge Bartkowicz's dismissal of count III in Miller's second amended complaint and remand for further proceedings. We note this outcome is consistent with generally accepted consumer expectations: receipt of services entails payment to the provider. The obligation to tender payment for benefits received is " 'dictated by reason and justice.' " *Steinberg*, 69 Ill. 2d at 334, quoting *Dummer*, 274 Ill. at 641. The will of the legislature is not thwarted where the legislation enacted does not contain language, clear and free from doubt, barring courts of equity from doing that which equity requires.

## CONCLUSION

When the Miller construction company began home remodeling work for the McGinnises without obtaining a signed contract or work order, it violated the terms of the Home Repair Act and, therefore, was precluded from proving up an oral contract, as the Act declares such contracts "unlawful." Judge Bartkowicz correctly ruled that Miller's claims based upon that oral contract, counts I and II, are barred by the Act. However, count III in Miller's second amended complaint alleges it completed extensive remodeling to the property to the McGinnises' satisfaction, and alleges that it has not been fairly compensated for its work. Because the Act does not contain a clear intent to abrogate the common law, the equitable remedy of *quantum meruit* remains available to Miller to receive remuneration for the services it provided, thereby depriving the McGinnises of any unjust enrichment. Proof of an oral contract is not an element of *quantum meruit*. We reverse Judge Bartkowicz's dismissal of count III in Miller's second amended complaint asserting *quantum meruit*. We remand for further proceedings on count III only.

Affirmed in part and reversed in part; cause remanded.

PRESIDING JUSTICE ROBERT E. GORDON, specially concurring:

I concur in the result but not in the judgment.

Both the author of the court's judgment and the dissent overlook the fact that the Act specifically and expressly leaves open the door for equitable remedies. For reasons that I cannot fathom, both overlook the last line of section 30, the section of the Act that defines "unlawful acts." 815 ILCS 513/30 (West 2006). In fact, both the judgment and the dissent quote the entire section but omit the last line.

For clarity's sake, I will quote the section *in its entirety*:

"Unlawful acts. It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause as required in Section 15 and Section 15.1 of this Act. *This conduct is unlawful but is not exclusive nor meant to limit other kinds of methods, acts or practices that may be unfair or deceptive.*" (Emphasis added.) 815 ILCS 513/30 (West 2006).

The portion of the section that was omitted by both the judgment and the dissent is highlighted.

Although the legislature declares that "this conduct is unlawful," the legislature then immediately states that this declaration is "not exclusive nor meant to limit." Thus, the enforcement provided by the Act is "not exclusive nor meant to limit." The legislature specifically stated that its declaration does not affect "other kinds of methods, acts, or practices that may be unfair or deceptive," such as, for example, what may be the unfair and deceptive acts of the real estate attorney in this case. If other deceptive acts are not affected by the Act, then presumably the court's ability to address them is not "limited" either. The expressly nonexclusive nature of the Act thus leaves the door open to equitable remedies, such as the *quantum meruit* claim in this case.

In addition, there is no indication in the Act that the legislature intended to provide either a cause of action or an affirmative defense to a private party. As Justice Freeman has previously observed, it is still an open question whether the legislature intended to create rights that consumers could enforce. *MD Electrical Contractors*, 228 Ill. 2d at 309 n.5 (Freeman, J., dissenting, joined by Burke, J.). The express language of the Act provides only for "enforcement" by "[t]he Attorney General or the State's Attorney of any county in this State." 815 ILCS 513/35 (West 2006).

For the foregoing reasons, I agree that the Act does not bar plaintiff's *quantum meruit* claim.

JUSTICE WOLFSON, dissenting:

Every once in a while a reviewing court has to choose between following the law and reaching a fair result. The majority reaches a fair result, but it does not follow the law.

The legislature made the decision for us. We must accept it, even though we might not like it. Section 5 of the Home Repair and Remodeling Act (Act) (815 ILCS 513/5 (West 2004)) is a statement of public policy. It tells us the "business of home repair and remodeling

is a matter affecting the public interest." 815 ILCS 513/5 (West 2004). The goal is to "increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices in that business in this State." 815 ILCS 513/5 (West 2004).

With that goal in mind, the legislature enacted section 30 of the Act, entitled "Unlawful acts":

> "It is unlawful for any person engaged in the business of home repairs and remodeling to remodel or make repairs or charge for remodeling or repair work before obtaining a signed contract or work order over $1,000 and before notifying and securing the signed acceptance or rejection, by the consumer, of the binding arbitration clause and the jury trial waiver clause as required in Section 15 and Section 15.1 of this Act." 815 ILCS 513/30 (West 2006).

Here, K. Miller Construction Co., Inc. (Miller), ignored every provision of section 30. There was no signed contract or work order. There was no binding arbitration clause or jury trial waiver. I agree with the majority that Miller's failure to comply with section 30 means it cannot pursue a contractual claim, oral or written, but I do not agree with the idea that a contractor who acts unlawfully, in violation of the public policy made explicit in the statute, has the right to seek the equitable remedy of *quantum meruit*.

This exact issue was raised and decided against the contractor in *Smith v. Bogard*, 377 Ill. App. 3d 842 (2007). In *Smith*, failure to comply with provisions of the Act barred the contractor from recovering any amounts he claimed for work performed, whether by contract or *quantum meruit* or unjust enrichment. Why? The court said:

> "Allowing a contractor a method of recovery when he has breached certain provisions of the Act would run afoul of the legislature's intent of protecting consumers, would reward deceptive practices, and would be violative of public policy." *Smith*, 377 Ill. App. 3d at 848.

Miller cites Fraud Act cases to bolster his claim that he can resort to equitable remedies. See 740 ILCS 80/1 *et seq.* (West 1992) (Frauds Act). But the legislature created the Home Repair and Remodeling Act as a separate statute, for a specific purpose. When that happens, as it did in *Machinery Transports of Illinois v. Morton Community Bank*, 293 Ill. App. 3d 207 (1997), a case concerning the Illinois Credit Agreement Act, traditional equitable remedies are barred when there is no written agreement. See also *McAloon v. Northwest Bancorp, Inc.*, 274 Ill. App. 3d 758 (1995).

No authority has been cited, nor have I found any, supporting the proposition that an act declared unlawful by the legislature can be sanitized by filtering it through a court of equity.

.

Miller is asking us to find an implied in law contract to avoid a harsh result. True, it appears that in this case it is the contractor who needs protecting. Then, again, we would not be wrestling with this issue if the contractor had done what the statute clearly told him to do—put it in writing.

The legislature's obvious purpose was to protect all consumers who come within the terms of the Act from the unseemly conduct of contractors. In addition, there is something to be said for predictability of cost and consumer expectation. There is nothing new about the need to suggest the exercise of judicial self-restraint when it becomes tempting to intrude into the legislative field. Mr. Chief Justice Marshall wrote:

> "Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or in other words, to the will of the law." *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 866, 6 L. Ed. 204, 234 (1824).

I respectfully dissent.